Williams v New York City Health & Hosps. Corp. (2025 NY Slip Op 51111(U))

[*1]

Williams v New York City Health & Hosps. Corp.

2025 NY Slip Op 51111(U)

Decided on July 16, 2025

Supreme Court, Kings County

Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 16, 2025
Supreme Court, Kings County

Nancy Williams, Plaintiff,

against
New York City Health & Hospitals Corporation, Defendant.

Index No. 531760/2022

Plaintiff
Michael M. Bast, Esq. (michael@michaelbastlaw.com)
Michael M. Bast, PC
20 Pierrepont Street, #2a
Brooklyn, NY 11201
718-852-2902
Defendant
David A. Belmont, Esq. (davidbelmont@mcf-esq.com)
McAloon & Friedman PC
1 State Street Plaza, Floor 23
New York, NY 10004
212-331-2213

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
NYSCEF #s: 25-41, 42-47, 48
Defendant New York City Health & Hospitals Corporation ("NYCHHC" or "Defendant") moves for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff Nancy Williams' ("Plaintiff") complaint in its entirety. Plaintiff opposes the motion.
Plaintiff commenced this action on November 1, 2022, asserting claims of medical malpractice and lack of informed consent against the defendant herein, in connection with [*2]treatment rendered on or about September 7, 2021, through on or about February 16, 2022. Plaintiff alleges that during a hysterectomy, Defendant's surgical team caused a bowel perforation that went undiagnosed, ultimately leading to Plaintiff's subsequent serious injuries.
At the time of the events in question, Plaintiff was 65 years old and had a history of high blood pressure, non-insulin dependent diabetes, gout, kidney stones, cervical intraepithelial neoplasia (pre-cancerous lesions of the cervix), left breast cancer in situ treated with lumpectomy in 2012 and a Stage II right breast cancer treated with mastectomy.
In August 2021, Plaintiff underwent a transvaginal ultrasound that showed a left adnexal mass, measuring 7.3 x 6.4 cm. A lab study showed elevated tumor markers for cancer. She also underwent an abdominal CT scan that showed renal stones, small hiatal hernia, hyperplasia of the adrenal glands, retroverted uterus, air in the cervical canal, a small left para-umbilical hernia and omental fat hernia. Plaintiff was seen in Defendant's gynecology clinic at Coney Island Hospital ("CIH") for a pre-surgery visit with gynecologic oncologist Dr. Paul Liu and second year OB/GYN resident Dr. David Toubiyan. Plaintiff reported past surgical history of breast lumpectomy and colonoscopy.
Due to the elevated tumor markers, ultrasound, CT scan findings, and multiple risk factors, she was offered a surgery to remove the adnexal mass and a hysterectomy and bilateral salpingo-oophorectomy (removal of the fallopian tubes and ovaries). Plaintiff signed the consent form for the surgery and Dr. Liu performed the surgery on September 8, 2021, assisted by fourth year OB/GYN residents, Dr. Regina Wilson and Dr. Rechona Gheewala. Dr. Liu performed a diagnostic laparoscopy and converted to an exploratory laparotomy upon observing multiple adhesions in Plaintiff's abdomen. The procedure involved lysis of adhesions, excision of the left adnexal mass, supracervical hysterectomy, and bilateral salpingo-oophorectomy. During the procedure, two injuries were identified, one to the bladder and one to the small bowel. Both were repaired intraoperatively by Dr. Liu. No other complications occurred during the surgery.
On the evening of September 8, 2021 and into September 9, 2021, Plaintiff had no complaints and her pain was controlled with IV medication. On September 10, 2021, Dr. Wilson and Dr. Liu were notified of feculent matter in Plaintiff's incision site. Dr. Liu saw Plaintiff and ordered a CT scan and a general surgery consult. At 2:23 p.m., Plaintiff was taken back into the operating room and underwent an exploratory laparotomy performed by Dr. Diedrich Holtkamp. Dr. Holtkamp identified a small bowel perforation of 5-6 mm and repaired it intraoperatively. Dr. Holtkamp's operative report indicated that Dr. Liu's previously repaired small bowel defect from the initial surgery remained intact.
Plaintiff was hospitalized from the date of her surgery (September 8, 2021) to until February 16, 2022. On September 11, 2021, Mrs. Williams became septic, requiring intubation, nasogastric tube placement, and aggressive antibiotic therapy. During the lengthy admission, she required a colostomy, suffered a heart attack and sustained an infected PICC line. She had ongoing fistula and healing problems but at the time of her discharge was in stable condition.
On February 18, 2022, a few days after her discharge, Plaintiff was seen in Defendant's GI clinic and reported doing well. On February 23, 2022, Plaintiff was readmitted to CIH and on March 4, 2022, she underwent an exploratory laparotomy, extensive lysis of adhesions, small bowel resection, fistula resection and a closure of the abdominal wall defect. On March 14, 2022, Plaintiff was discharged and from then on, denied complaints and reported good bowel movements and appetite.
Plaintiff alleges that Dr. Liu departed from the standard of care by injuring the small [*3]bowel during a hysterectomy and failing to discover and repair the third perforation, and that this departure was the proximate cause of Plaintiff becoming septic, requiring a colostomy, suffering a heart attack, and being hospitalized for five months. Plaintiff's claims against NYCHHC arise from their vicarious liability for Dr. Liu and other CIH staff.
"In determining a motion for summary judgment, the court must view the evidence in light most favorable to the nonmoving party" (Stukas v Streiter, 83 AD3d 18, 22 [2d Dept 2011]). In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department: "[A] defendant must make a prima facie showing either that there was no departure from good and accepted medical practice, or that the plaintiff was not injured by any such departure. Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden. Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions." (Rosenzweig v Hadpawat, 229 AD3d 650, 652 [2d Dept 2024] [internal quotation marks and citations omitted]). However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (Barnaman v Bishop Hucles Episcopal Nursing Home, 213 AD3d 896, 898-899 [2d Dept 2023], quoting Longhi v Lewit, 187 AD3d 873, 877-878 [2d Dept 2020]).
In support of this motion, NYCHHC submits an expert affirmation from Dr. Jason Wright, a physician board certified in both Obstetrics/Gynecology and Gynecologic Oncology.
Dr. Wright opines that the treatment provided by Dr. Liu and CIH staff conformed at all times to the appropriate standard of care. He further opines that the complications were an unavoidable secondary effect of Plaintiff's advanced age, diabetes-related impaired healing ability and hostile abdomen, and that the facts do not support Plaintiff's allegation that Defendant failed to obtain informed consent.
Opining that defendant complied with the standard of care, Dr. Wright sets forth that the procedure was inherently difficult due to Plaintiff's hostile abdomen, which could not be entered freely due to the large number of dense adhesions, and therefore Dr. Liu appropriately converted the surgery to a laparotomy from a laparoscopy. To enable the performance of the surgery, Dr. Liu spent a significant amount of time lysing, or removing, the adhesions to visualize the anatomy. It is Dr. Wright's opinion that the process of lysis caused the bowel wall to weaken due to the inherent exertion of pushing and pulling force on the small bowel, and the weakened bowel wall later progressed into a 5-6 mm perforation on September 10, 2021. Therefore, Dr. Wright opines that the 5-6 mm perforation that Dr. Holtkamp identified during the September 10 surgery was not recognizable at the time of Dr. Liu's procedure on September 8, 2021.
Dr. Wright opines that the standard of care was to inspect the small and large bowel intraoperatively to recognize any defects, a process known as "running" the bowel. He opines that Dr. Liu satisfied his obligation and conformed to the standard of care based on resident Dr. Wilson's testimony where she explained that she and Dr. Liu had run the small bowel and identified no defect in the area where the 5-6 mm perforation was eventually identified on September 10, 2021.
Dr. Wright opines that Dr. Liu's intraoperative repair of two other injuries, one to the bladder and another to a separate small bowel injury, is further evidence of his attentiveness to the need to identify and repair any perforation resulting from lysis. Furthermore, Dr. Liu employed oversewing, which Dr. Wright opines is the optimal surgical repair technique for [*4]Plaintiff's injuries.
Dr. Wright opines that Plaintiff's allegation that Dr. Liu should have called for a gynecologic oncologist to assist is "nonsensical" because Dr. Liu was himself a gynecologic oncologist. Plaintiff also claims that a general surgeon should have been present because of Plaintiff's hostile abdominal anatomy, but Dr. Wright rejects this claim, opining that gynecologic oncologists are trained to examine the small bowel for defects and to perform bowel surgery. Further, Dr. Wright opines that Dr. Liu did not unacceptably delay in converting from a laparoscopy to a laparotomy as Plaintiff asserts, and he opines that Dr. Liu did so expeditiously upon observing massive adhesions during his examination of Plaintiff's bowel.
Dr. Wright also rejects the allegation that CIH medical staff departed from the standard of care by not administering a rectal colonic integrity test, saline irrigation test, insufflation test or colonoscopy/sigmoidoscopy intraoperatively. The expert explains that each of those tests involve the large bowel and therefore would have been inappropriate to perform and are wholly inapplicable to the injury here.
Regarding Plaintiff's allegation of "allowing the plaintiff to become hypotensive," Dr. Wright opines that this allegation lacks merit due to Plaintiff having only a single transient episode of hypotension which is not attributable to treatment rendered by either the surgical team or anesthesiologist. He opines Plaintiff's hypotension was detected immediately, two units of packed red blood cells were transfused with good effect, and Plaintiff was stable when she left the operating room.
With respect to Plaintiff's allegation that failure to perform an intraoperative CT scan, plain x-ray, endoscopy, or complete blood count during the September 8, 2021 surgery constituted a departure from the standard of care, Dr. Wright opines that none are standard for the procedure at issue. He notes that there was no concern of a retained surgical instrument, a CT scan would have been inappropriate prior to identification of feculent material at the incision site, and complete blood count testing was performed postoperatively on September 8, 9, and 10.
Dr. Wright opines that there were no departures from the standard of care with respect to the diagnosis and management of the bowel injury. Dr. Wright explains that the first indication of a bowel perforation occurred on September 10, when feculent material was observed at the incision site. Plaintiff was returned to the operating room within two and a half hours of Dr. Wilson being notified of the feculent material. Thus, it is Dr. Wright's opinion that both the diagnosis of the perforation and the repair surgery were done in a timely manner. Additionally, as to Plaintiff's allegation that Dr. Liu negligently failed to appreciate an increased white blood cell count, Dr. Wright notes that Plaintiff's white blood cell count on September 8, September 9, and September 10 were all within normal limits.
Dr. Wright opines that Plaintiff's claims regarding the purported failure to avoid and/or treat infection, treat sepsis, treat septic shock and cardiac arrest, and summon the code team and anesthesia are meritless. Dr. Wright states that there is no evidence that Plaintiff had an infection at the time of the September 8 and September 10, 2021 surgeries or in the immediate postoperative periods. Dr. Wright further opines that Plaintiff was properly treated on October 1, 2021, when she developed low-grade fevers at CIH. A new central line was placed due to concern for a PICC line infection. After the placement of the central line, Plaintiff became unresponsive. She was immediately and successfully resuscitated and was intubated within ten minutes and transferred to SICU. On the same day, Plaintiff was extubated and the fever resolved. Septic shock was also treated successfully. He states that there was no evidence of [*5]infection or any other cardiac events during the rest of Plaintiff's admission or subsequent admission to CIH.
Dr. Wright opines that Plaintiff's allegation that Defendant failed to transfer the patient is "not understandable," as Plaintiff did not offer an explanation as to where, when, or why a transfer should have occurred. According to Dr. Wright, there was no point during Plaintiff's treatment where there was a reasonable basis for a transfer.
Dr. Wright opines that nothing Dr. Liu and CIH's medical staff did was the proximate cause of Plaintiff's injuries. Dr. Wright opines that Plaintiff's injuries were the result of an unavoidable surgical complication arising from a hostile abdomen with extensive adhesions. He opines that these conditions, combined with Plaintiff's age and diabetic condition, led to a thinned-out and weakened bowel wall which progressed into a perforation two days after the September 8, 2021 surgery. It is Dr. Wright's opinion that this is a recognized and accepted complication of this type of surgery, not caused by any negligence on the part of the surgeon.
Additionally, Dr. Wright opines that Dr. Liu's post-operative instructions were not a cause of Plaintiff's small bowel perforation, nor was any alleged departure involving a failure to obtain Plaintiff's surgical history. Dr. Wright acknowledges that knowing a patient's complete surgical history is important but opines that even if Plaintiff disclosed her entire surgical history, it would not have affected the management of her treatment. He further opines that Plaintiff's failure to provide the treatment team with this information was not a substantial factor in causing her injuries. A complete pre-operative familiarity with Plaintiff's past surgical history would have only indicated that a surgeon specializing in procedures involving a hostile abdomen would have been qualified to proceed with the operation, and Dr. Liu was the type of gynecologic oncology specialist who was most qualified. Thus, he opines that no additional benefit would have been conveyed if Plaintiff fully disclosed her complete surgical history.
Defendant has established prima facie entitlement to summary judgment, based on the expert submission setting forth that Dr. Liu and the CIH staff's treatment of Plaintiff complied with the standard of care. Defendant's expert further established prima facie that no alleged departures from the standard of care were the proximate cause of Plaintiff's injuries. The burden therefore shifts to Plaintiff to raise an issue of fact.
In opposition, Plaintiff submits an expert affirmation from a board-certified general surgeon, licensed in New York, [name of expert redacted]. The Court was presented with a signed, unredacted copy of the expert affirmation for in camera inspection.
Plaintiff's expert opines that Dr. Liu and the surgical team significantly departed from the standard of care by failing to identify the source of bleeding during the adhesiolysis. The expert notes that, according to the operative report, the patient became hypotensive during the adhesiolysis. Based on this, the expert opines that the patient experienced excessive bleeding for which she received two transfusions during the surgery to stabilize her blood pressure. The expert explains that when excessive bleeding occurs during a procedure involving dense adhesions, there is a high probability of bowel injury and standard practice requires identifying and repairing the source of bleeding. The expert further notes that no pelvic injury was documented that would explain the volume of blood loss, which supports their conclusion that an undiagnosed bowel injury was the source.
Plaintiff's expert opines that the standard of care required Dr. Liu and the surgical team to search for, identify, and repair perforations by "running" the bowel prior to closure. The operative report documents that only the pelvis was examined and does not include language [*6]indicating that the bowel was run. Plaintiff's expert opines that the perforation was found in the lower abdomen and not the pelvis, and this explains why only an examination of the pelvis would miss the injury. Plaintiff's expert further opines that Dr. Wright's reliance on Dr. Wilson's testimony that Dr. Liu "thoroughly inspected the bowel" is problematic because her own operative report documents only that the pelvis was inspected. Plaintiff's expert opines that Dr. Wilson's testimony is unreliable compared to her contemporaneous documentation of the surgery because she testified four years after the initial surgery and has likely performed hundreds of subsequent procedures. Lastly, Plaintiff's expert notes that when Dr. Wilson was asked whether her operative report documented that the bowel was run, she tried to reinterpret the report. The expert opines that this attempted reinterpretation suggests the original examination was limited.
As for the leakage of feculent material from Plaintiff's incision site, Plaintiff's expert notes that there is no corresponding nurse's note indicating when the discharge was first noticed or when the last nursing bedside visit was. Dr. Wilson testified that it could have been four hours between the leakage and when she was notified, and Plaintiff's expert opines that if this is true, there was an unacceptable delay in monitoring and reporting of Plaintiff's changed condition. Therefore, on this basis he opines that there was a delay in the repair surgery which increased the risk of infection and worsening of Plaintiff's condition.
Plaintiff's expert counters Dr. Wright's theory that the perforation did not occur intraoperatively during the initial September 8, 2021 surgery and instead developed post-operatively as a known complication of surgery. Plaintiff's expert notes that Dr. Wright suggests the bowel wall became thinned during adhesion removal. However, Plaintiff's expert opines that 48 hours is too short for a thinned bowel wall to progress into a full perforation without the injury being observable during the initial surgery. Plaintiff's expert also opines that Dr. Wright's logic is flawed because it ignores the more likely scenario that "the hole existed but was simply missed due to inadequate examination."
Plaintiff's expert further opines that a general surgeon should have been available and on call due to their more extensive experience with adhesiolysis of the small bowel and identification and repair of small bowel perforations compared to a gynecologic oncologist. Plaintiff's expert also opines that an open hysterectomy should have been anticipated due to Plaintiff's surgical history. During the laparoscopy, the trocars should have been placed under direct visualization and this failure increased the risk of perforation and extended the duration of surgery, which Plaintiff's expert opines correlates with greater risk of injury. Plaintiff's expert further notes there is lack of documentation regarding organ retraction, which if done improperly, can cause perforations. It is this expert's opinion that the absence of this documentation makes it impossible to verify that appropriate techniques were employed to avoid perforations.
On the issue of proximate causation, Plaintiff opines that the failure to locate and repair the source of substantial bleeding and failure to run the bowel during the September 8, 2021 surgery resulted in an undiagnosed small bowel perforation, which allowed feculent leakage at Plaintiff's incision site and ultimately led to additional surgery and colostomy, a PICC line infection, cardiac arrest, sepsis and multiple other complications. The expert opines that the occurrence of the feculent leak contributed to the patient's multiple injuries.
Additionally, Plaintiff's expert counters the opinion that a failure to obtain a complete surgical history did not contribute to Plaintiff's injuries. The expert opines that a complete surgical history would have alerted Dr. Liu of similar potential challenges as Plaintiff's 2015 [*7]abdominal surgery that was converted from laparoscopic to an open procedure.
Plaintiff has raised issues of fact as to the alleged departures of Dr. Liu and CIH staff. The experts set forth conflicting opinions as to whether the surgical team properly identified a source of bleeding during adhesiolysis and whether the bowel was properly run during the initial September 8, 2021 surgery. Furthermore, the experts conflict on whether obtaining Plaintiff's complete surgical history was necessary before surgery and whether proper surgical techniques were employed to avoid perforations. Lastly, the experts conflict as to whether there was an unacceptable delay in the monitoring and reporting of feculent leakage at Plaintiff's incision site.
The experts also conflict on the issue of proximate causation. Defendant's expert contends that Plaintiff's injuries resulted from an unavoidable complication arising from a hostile abdomen with extensive adhesions. These conditions combined with Plaintiff's age and diabetic status, contributed to a weakened bowel wall that ultimately progressed into a perforation after the September 8, 2021 surgery. Plaintiff's expert contends that the surgical team's failure to locate the source of bleeding and properly examine the bowel during the initial surgery led to an undiagnosed perforation, leading to sepsis and the numerous further injuries claimed in this case. For these reasons, there are issues of fact here requiring resolution by a jury.
Turning to the issue of informed consent, to sustain a separate cause of action for lack of informed consent, the injured party must demonstrate:
"(1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury. The third element is construed to mean that the actual procedure performed for which there was no informed consent must have been a proximate cause of the injury" (Figueroa-Burgos v Bieniewicz, 135 AD3d 810, 811-812 [2d Dept 2016] [internal citations and quotation marks omitted]).
The Second Department further elaborated,
"[w]hile the signing of a generic consent form by the plaintiff does not establish that a defendant is entitled to summary judgment, a defendant can establish entitlement to summary judgment by demonstrating that the plaintiff signed a detailed consent form after being apprised of alternatives and foreseeable risks, by demonstrating that a reasonably prudent person in plaintiff's position would not have declined to undergo the surgery, or by demonstrating that the actual procedure performed for which there was no informed consent was not a proximate cause of the injury" (Pirri-Logan v Pearl, 192 AD3d 1149 [2d Dept 2021] [internal citations omitted] [emphasis added]).
On the issue of informed consent, Dr. Wright opines that the interactions between Plaintiff and CIH medical staff constituted informed consent. He bases this opinion on the signed Informed Consent Form and the deposition testimony of Dr. Liu and Dr. Toubiyan. He opines that Dr. Liu and Plaintiff discussed, on two occasions, the details of the proposed treatment including why the procedure was indicated to rule out cancer, and that Plaintiff was advised of the risks associated with the surgery on two occasions, once by Dr. Liu and once by Dr. [*8]Toubiyan. Additionally, Dr. Wright opines that the Informed Consent Forms and Dr. Toubiyan's deposition testimony reflect that Plaintiff was advised of the risks, benefits and alternatives of the surgery, specifically that one of the risks was damage to surrounding structures such as the bowel, bladder or uterus, hemorrhage and death. Dr. Wright also states that Plaintiff was again advised of the risks by Dr. Liu and Dr. Wilson on the day of the surgery, September 8, 2021. Dr. Wright opines that there was no basis to conclude that the mass was not cancerous and that the only viable treatment option was the procedure performed by Dr. Liu, as there were not any non-surgical management approaches available for addressing the presence of this type of mass.
On this issue, Plaintiff's expert opines that the medical record lacks details as to what information was provided to Plaintiff about ovarian cancer risks, including whether there was an explanation of elevated serum markers, discussion of the urgency or non-urgency of the recommended procedure, consideration of alternative procedures, possible additional diagnostic tests or consultations, or Plaintiff's complete surgical history. Further, Plaintiff testified in her 50-H hearing that no risks or alternatives were discussed with her before signing the forms. Additionally, the expert recounts that Plaintiff testified that if she was advised that the mass was likely not cancerous, she would not have undergone the procedure.
Based on the conflicting testimony of the parties and lack of documentation in the record as to what risks and alternatives were discussed, there remain issues of fact as to whether Plaintiff was adequately warned of the risks of the procedure, including bowel perforation. The parties have also adduced conflicting expert opinions on this issue, as the Plaintiff's expert opines that she was not given sufficient information on the urgency or non-urgency of the procedure, its potential alternatives, and the likelihood that the mass was malignant to make an informed decision. As these issues of fact and credibility require resolution of a jury, summary judgment cannot be granted on the issue of informed consent.
Accordingly, it is hereby:
ORDERED that Defendant's motion for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint against them, is DENIED in its entirety.
This constitutes the decision and order of this Court.
ENTER.
Hon. Consuelo Mallafre Melendez
J.S.C.